**STENDER v. UNITED STATES.**

No. 10011.

Circuit Court of Appeals, Eighth Circuit.

Jan. 17, 1935.

Philip R. Monson, of Fergus Falls, Minn. (Dell & Rosengren, of Fergus Falls, Minn., on the brief), for appellant.

Wilbur C. Pickett, Sp. Asst. to Atty. Gen. (George F. Sullivan, U. S. Atty., Russell C. Rosenquest, Asst. U. S. Atty., both of St. Paul, Minn., and Will G. Beardslee, Director, Bureau of War Risk Litigation, of Washington, D. C., on the brief), for the United States.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

SANBORN, Circuit Judge.

The question presented by this appeal is whether, at the time the appellant brought this action to recover on his war risk policy, such action was barred by section 19 of the World War Veterans' Act 1924, as amended by Act July 3, 1930, § 4 (38 U. S. C. § 445, 38 USCA § 445), which provides that, "No suit on yearly renewable term insurance shall be allowed under this section unless the same shall have been brought within six years after the right accrued for which the claim is made or within one year after July 3, 1930, whichever is the later date"; and "that this limitation is suspended for the period elapsing between the filing in the bureau of the claim sued upon and the denial of said claim by the director."

This action was commenced August 4, 1932, and was based upon the appellant's original renewable term policy, which lapsed in 1919 after his discharge from the service. The government contends that the claim for the benefits of this policy was filed June 22, 1931, that a disagreement was issued July 11, 1932, which was received by the appellant July 13, 1932, and that therefore the suit could not be maintained after July 25, 1932. The appellant contends that he first filed a claim for his term insurance on October 3, 1922, and that he next filed a claim for it on August 13, 1930. He concedes that if the documents which he asserts constitute claims for the benefits of his policy of term insurance were not claims, then his action was commenced too late. The government concedes that if the two documents which are asserted to be claims are such, the action was brought in time.

It is necessary, therefore, to determine only whether the documents referred to by the appellant as claims come within section 19 of the World War Veterans' Act of 1924, as amended (38 U. S. C., § 445, 38 USCA § 445), which provides: "The term 'claim' as used in this section, means any writing which alleges permanent and total disability at a time when the contract of insurance was in force, or which uses words showing an intention to claim insurance benefits and the term 'disagreement' means a denial of the claim by the director or some one acting in his name on an appeal to the director."

The first writing which the appellant says was a claim is his affidavit of October 3, 1922, which was sent to the Veterans' Bureau on or about that date. It reads as follows:

"State of Minnesota, County of Otter Tail
—ss.

"On this, the 3rd day of October, A. D. 1922, personally appeared before me, Paul J. Stender, the undersigned, who, upon first being duly sworn according to law, deposes and says,

"That he entered the U. S. Army on June 14, 1918, in excellent physical condition, that he was a farmer by trade and able to do continual manual labor without undue fatigue.

"That while crossing the English Channel in September he was taken very ill of influenza and upon arriving at La Havre, France, he was removed to a hospital where he remained for about two weeks and then was sent to a Convalescent Camp at La Havre for about two weeks.

"That he was then sent to his organization but that by some mistake he became connected with another organization which was at the Front. He was still too weak for active duty but was subjected to gas. This was in the Argonne Wood. He was very ill and suffered from headache and vomiting. That he rejoined his organization in about two weeks and was relieved of all duty for two weeks.

"Deponent swears that he has suffered intermittently from a pain in his left side of his chest ever since, that it comes and goes according to the weather and according to the amount of work he does, that he has been unable to do a full day's work since discharge and that he has not been able to do any heavy work at all and that when he attempts to do so the pain in his chest becomes more acute and that it is also affected by damp weather. Deponent further swears that he is much inclined to cough during damp weather and that he sweats some. Deponent further swears that while at Nantes, France, while on M. P. duty he was hit in the nose by a drunken soldier and that his nose was broken and that he was in the hospital for three days. Deponent swears that his nose now seems to be clogged on one side and that he is unable to breathe through that side and that his hearing seems to be affected.

"Deponent further swears that the pain in his side became very severe in the summer of 1920, improves some but that he was taken with severe attack of pleurisy in Oct., 1920, and consulted Dr. Esser about in January, 1921, (See Dr. Esser's statement previously sent in) and that he was unable to work because of the pain in his side before late in April or early in May.

"Deponent filed a claim in the Spring of 1922 and was examined in Fargo on June 3rd. That he was told to send in a sputum specimen which he did about a week later.

"Deponent further swears that late in August 1918 he developed eye trouble and that he was confined to quarters for about two weeks. His eyes were inflamed and sore and the doctor kept them bandaged for about eight days. He received treatment on the boat going-over, and has had some trouble with his eyes ever since. Deponent further swears that he is very nervous and is frequently unable to sleep. Inasmuch as he has been unable to do any heavy work since his discharge because of the aforesaid disabilities he feels that he is entitled to compensation from date of discharge and asks that his case be given careful consideration.

"[Signed]   Paul J. Stender.

"Subscribed and sworn to before me on the day and year first above written.

"[Signed]   Lynn E. Lake,
"[Notarial Seal.]"

The appellant contends that this is a "writing which alleges permanent and total disability at a time when the contract of insurance was in force," and that, although it clearly directs the attention of the Veterans' Bureau to the matter of compensation only, it is to be regarded as a claim for the benefits of his policy of term insurance.

Giving to the appellant the benefit of every possible doubt, the affidavit asserts nothing more than a partial disability since discharge, with periods of temporary total disability. There is nothing in the affidavit which amounts to an allegation that permanent and total disability existed at any time when the appellant's original policy was in force. The facts stated would not justify a finding to that effect. Eggen v. United States (C. C. A. 8) 58 F.(2d) 616; Falbo v. United States (C. C. A. 9) 64 F.(2d) 948; United States v. Green (C. C. A. 8) 69 F. (2d) 921, 922, 933. Therefore, the affidavit cannot be regarded as a claim for insurance benefits within the statutory definition.

The second writing which the appellant regards as a claim was an application for permanent and total disability benefits under a $3,000 government policy, No. K–839,436, which the appellant had procured June 1, 1927, by reinstating and converting $3,000 of his original $10,000 of term insurance which had lapsed. The application for the benefits under the converted policy was filed in response to the following communication

from the Veterans' Bureau dated August 5, 1930, and directed to the appellant:

"Dear Sir: This Bureau has been furnished a rating made in the Regional Office at Minneapolis, Minnesota which shows that you have been rated permanently and totally disabled from March 17, 1930.

"In order to present a claim for permanent total disability insurance benefits under your U. S. Government Converted Life Insurance policy K–839 436 you should execute the enclosed Form 579 in duplicate and return it to this Bureau, together with policy K–839 436.

"In the event the policy has been lost or destroyed there should be submitted in lieu thereof an affidavit setting forth the circumstances surrounding such loss or destruction, embodying a statement to the effect that if subsequently found the policy will be returned to this Bureau.

"By direction, H. H. Milks,
"Chief, Awards Division."

The application submitted by the appellant, and which was received by the Awards Division of the Veterans' Administration on August 13, 1930, is entitled, "Claim For Insurance—Permanent Total Disability," and reads as follows:

"I, Paul John Stender, believe myself to be entitled to receive the monthly payments of insurance granted by the United States to me under certificate or policy number K 839-436, on account of permanent total disability resulting from kidney condition with cystitis, epididymitis, prostatitis, seminal vesiculitis and healed fistula in ano.

"My permanent home address is 114 E. Bancroft Ave., Fergus Falls, Minn.

"I desire checks mailed to Paul J. Stender (above address).

"In support of my claim to such insurance I make the following statement as true to the best of my knowledge and belief:

"1. Under what name did you serve? Paul John Stender.

"2. Color White. Date of birth Jan. 25, 1895. Place of birth Otter Tail County, Minn.

"3. Make a cross (x) after branches of service you served in:

"General Service x Limited Service ...... Army x Navy ...... Marine Corps ...... Coast Guard ...... (a) Give Serial No. 2066393.

"4. Date you last entered service June 24. 1918

"(a) Place of entry Fergus Falls, Minn.

"(b) Have you had any previous military service? No.

"(c) If so, give dates of enlistment and discharge, rank and organizations ......

"5. Date of last discharge Oct. 18, 1919. Place of discharge Camp Dodge, Iowa.

"6. Company and regiment or organization, vessel on which, or station at which, you last served. 265th Co. M. P. C.

"7. Rank or rating at time of discharge. Private 1st Class.

"8. Nature of discharge: Honorable x; ordinary ......; dishonorable ......; bad conduct ......; S. C. D. ......

"9. Date disability began. Sept. 1918.

"10. Cause of disability. Influenza and gas.

"11. Where received. In foreign service in France.

"12. Did you receive treatment at an Army or Navy Hospital, or, any other hospital? Yes. (a) If so, state name and location of the hospital and dates of treatment. La Havre of France in English hospital in Sept. 1918 for two weeks.

"13. Name and address of physicians who have attended you since your disability began. Dr. J. Esser, Perham, Minn., in 1920 and 1921. Since then I've been under the care of U. S. Veteran doctors in Mpls. and Fargo.

"14. Are you confined to bed? Yes. Do you require constant nursing or attendant? Yes.

"15. Name and address of nurse or attendant. Mrs. Paul J. Stender.

"16. Are you willing to accept medical or surgical treatment if furnished? Yes.

"17. Give number of any compensation claim filed on account of this disability and place where filed. C-1238352, U. S. Vet. Bureau, Mpls. Minn.

"18. Give the name of the person named as beneficiary in your application for insurance. Hanna Josephine Stender (wife).

"19. Have you since changed the beneficiary to some other person? No.

"(a) If so, to whom?

"20. Date and place of last marriage. Sept. 15, 1923.

"21. Give name and address of each of your parents living. Mrs. Marie Stender, Sr., Dent, Minn.

"22. Has either you or your wife been previously married? No.

"(a) If so, state when and how former marriages of either were terminated.

"I do solemnly swear that the foregoing statements are true to the best of my knowledge and belief.

"Paul John Stender,
"(Claimant's name in full.)"

It will be noted that this claim for insurance is limited solely to the converted policy. The application refers to it by name and number, and gives the name of the beneficiary as Hanna Josephine Stender, to whom the appellant was married September 15, 1923, and states that no change of beneficiary has been made. The original policy of term insurance was payable to the appellant's mother. There is no suggestion in the writing anywhere that the insured claims to be entitled to the benefits of his term insurance; unless that is to be inferred from the question, "Date disability began," and the answer, "Sept. 1918." If this question and answer are equivalent to a statement that the insured claimed to have been permanently and totally disabled since that date, then the writing could be regarded as one in which the insured alleged permanent and total disability at a time when his original contract of insurance was in force.

While the contention that this writing shows that the appellant therein claimed that he was permanently and totally disabled in September, 1918, is not without some force, we think that the most that can be said for the writing is that it contains an allegation that permanent and total disability occurred while the converted policy was in force, and that such disability had its origin in September, 1918, at a time when the insured was in the service. In other words, it shows a permanent and total disability while the converted policy was in force, which disability had a service origin. But even if the writing could be considered one which might possibly come within the broad meaning of the statutory definition of a claim, there is nothing in it which would in any way notify those receiving it that the appellant was presenting any claim for the benefits of his term insurance.

In United States v. Peters (C. C. A. 8) 62 F.(2d) 977, 978, 979, we said with reference to a letter which it was contended constituted a claim for insurance:

"Since the United States consented to be sued only in case of the existence of a disagreement, it was incumbent upon the plaintiff to allege and prove that she or some one in her behalf had written to the Veterans' Bureau, claiming that the insured, David A. Peters, had become totally and permanently disabled while his contract of insurance was still in force, or using words which showed an intention to claim insurance benefits. In addition, it was incumbent upon her to prove that her claim was denied by the Director, or by some one acting in his name, on an appeal to him. * * *

"It seems clear that there can be no disagreement within the meaning of the statute unless the Director is given information as to who is making a claim and as to what the claim is. Unless the Director is advised that some person is claiming to be entitled to the benefits of the contract and is asserting that, while it was in force, a contingency insured against occurred, he is in no position to agree or to disagree with the claimant as to the question of liability under the contract. The letter of J. F. Peters was not a writing which alleged total and permanent disability of the insured while the insurance was in force, nor did it use words which showed an intention on the part of any one beneficially interested in the contract to claim insurance benefits under it. The letter indicated that the insured was not disabled prior to 1921. It did not state that the writer was a beneficiary or that he was representing any one who was. It did not assert or intimate that the contract had matured prior to its lapse. Furthermore, the letter of the Assistant Director did not purport to be a denial by the Director of the claim of any one for insurance benefits. It gave Mr. Peters the information he requested."

See, also, United States v. Collins (C. C. A. 4) 61 F.(2d) 1002; Wilson v. United States (C. C. A. 10) 70 F.(2d) 176.

We fail to see how the Director could either grant or deny a claim for the benefits of term insurance unless he was in some way notified that such a claim was being made. Had he acted upon the application for the benefits of the converted policy, as requested by the appellant on August 13, 1930, his granting or denial of the application would clearly have constituted neither the granting nor the denial of any claim for the benefits of the original term policy.

Our conclusion is that the court below was correct in determining that neither the affidavit of October 3, 1922, nor the appli-

cation of August 13, 1930, had the effect of tolling the statute of limitations.

The judgment of dismissal is therefore affirmed.